UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

DIAN M. HICKS,                          §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §        CIVIL ACTION NO.
                                        §        5:05-CV-0281-C
                                        §        ECF
JO ANNE B. BARNHART,                    §
Commissioner of Social Security,        §
                                        §
            Defendant.                  §

## REPORT AND RECOMMENDATION

Plaintiff Dian M. Hicks seeks judicial review of a decision of the Commissioner of

Social Security denying her application for Disability Insurance Benefits (DIB).

The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the

United States Magistrate Judge for report and recommendation, proposed findings of fact and

conclusions of law, and a proposed judgment. After reviewing the administrative record and

the arguments of both parties, this court recommends that the District Court affirm the

Commissioner's decision.

## I.     Standard of Review

In Social Security appeals judicial review is limited to (1) whether the

Commissioner's final decision is supported by substantial evidence, and (2) whether the

Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209

F.3d 448, 452 (5th Cir. 2000) (citations omitted). A finding of no substantial evidence is

appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). In this case, the Commissioner's determination that Hicks is not disabled is supported by substantial evidence and, further, was reached through proper legal standards; thus, her decision is conclusive and must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).

## II.   Facts

The medical condition for which Hicks bases her claim of disability began in 2001. At that time she worked as a trainer and machine operator at a manufacturing plant. (Tr. 27, 171, 235.) According to Hicks, she began experiencing pain in her back at work on April 11, 2001, and the records indicate that she left work the following day because of her pain and was examined on April 16, 2001, by a physicians' assistant at the offices of her employer's designated physician, David Rowlett, M.D., and diagnosed with lumbosacral strain. (Tr. 72, 235. ) Thereafter, an x-ray of Hicks' lumbosacral spine showed generalized desiccation of the L5-S1 nucleus pulposus and minimal posterior bulging of the L5-S1 disc. (Tr. 282.) Dr. Rowlett treated Hicks' back pain throughout 2001 and advised that she remain off work during that time. (*See e.g.*, Tr. 212, 225, 273.) During this time Hicks was also evaluated by a number of specialists, underwent electromedical nerve blocks, injections, physical therapy, and took prescription pain medication for her pain. (Tr. 76, 187-91, 228, 271-76.) In November 2001, neurosurgeon Matt Wills, M.D., examined Hicks. He noted that she could walk approximately three blocks before having to stop because of pain and had

difficulty sitting in any one position for long periods of time.  (Tr. 272.)  He advised that Hicks was not improving with conservative therapy and indicated that surgical intervention was an option but that he first wanted to refer Hicks to Ralph Menard, M.D., for evaluation and exhaust less invasive means of treating her pain.   (Tr. 273-74.)   Dr. Menard acknowledged that Hicks had degenerative disc disease at her L5-S1 disc. (Tr. 272.)  He also noted his suspicion that there was a psychological component to Hicks' complaints but also noted that without records from a psychologist Hicks was seeing, he could not determine the extent to which her complaints could be attributed to such a cause.   (Tr.   271-72.) Dr. Menard also recommended treatment with an epidural injection and noted that surgical intervention might be indicated.  (Tr. 272.)

Although the records indicate Hicks underwent epidural injections, which were not successful, she did not undergo surgery on her back.  (Tr. 76, 228, 273.)  In February 2002 Dr. Rowlett discharged Hicks from his care.  (Tr. 221-22.)  He noted that Hicks had reached maximum medical improvement "as she [was] not entertaining types of invasive procedures." He further noted that she had "treatment failure with two different attempts at pacing her through the David Back Clinic and [had] seen a number of clinicians, including Dr. Menard and James  Woessner, M.D., but she [had] not [experienced] significant clinical gains." (Tr. 222.)  Dr. Rowlett noted that he had recommended that she remain off work while undergoing physical therapy for purposes of prioritizing her therapy.  However, he noted that she was doing light housekeeping at home without "too much difficulty" and advised that she would be restricted to sedentary to light work in the workplace.  *Id*.

3

Thereafter Dr. Wills examined Hicks in 2003 and 2004. (Tr. 270, 273.) An MRI from 2004 showed no changes from the MRI in 2001. (Tr. 268.) Dr. Wills noted that Ultracet had "made her more functional" but she still complained of pain that was aggravated by activity, prolonged sitting, and prolonged standing. *Id.* He also noted that he advised Hicks that he would perform an L5-S1 interbody fusion if her pain persisted or increased or was not controlled with Ultracet; however, he also noted that "[f]or the moment we seem to have things controlled with the Ultracet." *Id.*

The Administrative Law Judge (ALJ) determined at step five of the sequential disability analysis that despite her impairments Hicks retained the capability of performing limited light work. (Tr. 15-16.) He determined that Hicks could not perform her past work because she was incapable of performing the full range of light work. Based on testimony from a vocational expert, however, he determined that she was capable of performing other jobs that exist in significant numbers in the national economy. (Tr. 16.)

## III.   Questions Presented

Hicks presents the following questions for the Court's review: (1) whether the Administrative Law Judge erred as a matter of law in failing to fully and fairly develop the administrative record before issuing an unfavorable decision; and (2) whether the ALJ erred by disregarding hypothetical questioning he posed to the vocational expert and the vocational expert's response to the hypothetical questioning.

IV.   **Discussion**

    A.   *Full and fair development of the record*

Hicks argues that the record is replete with inconsistencies, conflict, and intentional manipulation of her treatment and therefore the ALJ should have further developed the administrative record before denying her claim.  She contends Dr. Rowlett was more concerned with meeting the guidelines of her employer's insurance company than providing her with appropriate medical care.  She points out that he did not refer her for diagnostic studies because her employer's insurance company's standards did not allow such a referral.  She also points out that Dr. Rowlett indicated in examination notes that she refused to submit to epidural injections and invasive procedures despite references in the record which show that she did, in fact, submit to injections and electro medical nerve blocks.

Hicks also claims that the records from Patrick D. Randolph, Ph.D., a psychologist who examined her in 2002, are not in the record and the daily treatment notes from her physical therapy sessions are missing.  She claims that consulting psychiatrist R. Preston Shaw, M.D., who examined her in 2002 was provided with only one record, which was the record from her first examination by Dr. Woessner.  She points to a particular portion of Dr. Shaw's notes in which he stated, "She says she gets depressed and frustrated because she thinks if she had gotten the right treatment of the steroid injections– epidural injections– would have liked to see if this would have helped and if that didn't work, would have elected surgery."  Hicks contends that the notation from the consulting psychiatrist conflicts with

Dr. Rowlett's report that she refused injections and invasive treatment, which was his reason for discharging her from treatment. She argues that Dr. Rowlett was intent on making sure that she was not examined or treated by a specialist and that his efforts in this regard are obvious in the record. She claims that the record shows a pattern of denial in health care treatment and that the ALJ should have recognized this conduct and ensured that all medical records were gathered and should have ordered a consultative examination with an independent orthopedist or neurosurgeon.

The quality of medical treatment in the United States may at times be compromised by standards imposed by insurance carriers. However, this issue does not fall within the limited review Congress has authorized in Social Security appeals. *See Martinez*, 64 F.3d at 173 (citing 42 U.S.C. § 405(g)). The court is limited to determining whether proper legal standards were used to evaluate the evidence and whether substantial evidence supports the Commissioner's decision. *Id.* In this case there was no error in evaluating the evidence, and medical records other than those provided by Dr. Rowlett substantially support the ALJ's decision. Further, although Dr. Rowlett's reasons for discharging Hicks from his care may not have been justified and although he may have recommended conservative treatment and may have recommended against referral to a neurosurgeon, Hicks underwent an MRI, electromedical nerve blocks, and was examined by Dr. Wills despite Dr. Rowlett's recommendations. (Tr. 76, 187-91, 228, 271-76.) In addition, despite conflicting reports as to whether Hicks underwent injections, evidence from both Hicks and her physicians demonstrate that she did, in fact, undergo injections. (Tr. 76, 230, 272.)

6

Finally, a consultative examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). In this case there was sufficient evidence in the record for the ALJ to make his decision. Reversal on Hicks' first point of error is therefore not required.

B.    *The ALJ's hypothetical questioning and residual functional capacity determination*

As is customary, the ALJ posed a hypothetical question to the vocational expert at the hearing. In this case the ALJ asked the vocational expert whether a hypothetical individual with Hicks' education and vocational profile could perform light work with certain exertional and nonexertional limitations. (*See* Tr. 40.) The vocational expert identified three jobs that would accommodate the limitations listed in the ALJ's hypothetical question. The ALJ then asked the vocational expert whether such an individual could perform the identified jobs if, because of back pain, the individual needed to take breaks in addition to a lunch break and the customary two breaks allowed in the work day. (Tr. 41.) The vocational expert indicated that the identified jobs could not be performed if such additional breaks were required. *Id.* In his decision the ALJ listed the limitations he included in his hypothetical question, including a "suspend" or sit/stand option, but did not include or otherwise acknowledge his question regarding additional breaks or the vocational expert's response to his second question. (Tr. 15-16; *compare* Tr. 40-41.) Hicks contends this was reversible error.

Reversal is not required on this point.  The ALJ may address more than one hypothetical question to the vocational expert but incorporate into his decision the limitations from only one of the hypothetical questions.  *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000) (ALJ posed three hypothetical questions to the vocational expert which included different limitations but incorporated limitations from only one of the hypothetical questions into his decision).   The ALJ is required to consider the limiting effects of all the claimant's impairments and assess the claimant's residual functional capacity based on all the relevant evidence.  20 C.F.R. §§ 404.1545, 416.945 (2005).  The ALJ did so in this case, and based on this court's review of the evidence, his residual functional capacity determination is supported by substantial evidence.

Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision.  *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  Under this standard the court is not permitted to reweigh the evidence or substitute its own judgment for that of the Commissioner.  *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991).  Even in a case in which the evidence indicates a mixed record concerning a claimant's health problems and limitations upon his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support the ALJ's

8

determination. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (citation omitted).

The medical evidence indicates that despite complaining of pain in her back for over three years, Hicks' pain was not totally incapacitating and was controlled with prescription medication. (Tr. 268, 273.) Further, Hicks testified that she worked part time as a home health provider cooking and cleaning for disabled individuals, prepared meals for her husband and herself when she returned home for work, and did limited housework at her own home. (Tr. 26, 31.) She also testified that she was capable of lifting ten to fifteen pounds without problem, was able to drive herself, was capable of walking three blocks to visit her sister at her sister's home, attended Bible study classes on Wednesday nights, and sang in her church choir on Sunday mornings. (Tr. 32-34.) Although Hicks worked part-time and was involved in limited activities, such activities are inconsistent with a finding of disability. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).

Finally, "[p]rocedural perfection in administrative proceedings is not required." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). The court should not vacate the Commissioner's decision unless the substantial rights of the claimant have been affected. Even in a case in which the ALJ commits error, the court is constrained against reversing the Commissioner's decision when such error is harmless. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); s*ee also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error even if it were determined that the ALJ had erred because it was "inconceivable that the ALJ would have reached a different conclusion" in absence of an

error). In this case, there is substantial evidence to support the Commissioner's final decision that Hicks is not disabled, and remand for additional proceedings would not change that conclusion.

## V.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Hicks' Complaint with prejudice.

## VI.   Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   July 18, 2006.

NANCY M. KOENIG
United States Magistrate Judge